OPINION OF THE COURT
Stanley L. Sklar, J.
This is an action sounding in medical malpractice, negligence and products liability arising out of the death of plaintiffs decedent, Martha Kraut (Kraut). Kraut suffered cardiac arrest during a myomectomy and ovarian cystectomy performed at defendant, St. Luke’s Roosevelt Hospital (the hospital). It is claimed that the cardiac arrest resulted when a cell saver machine which was being used during surgery to clean and re-infuse the patient’s blood instead, as a result of either malfunctioning of the cell saver or its negligent use, reinfused fluid from an endometriotic cyst.
It was learned at some unspecified time through discovery that following Kraut’s death the hospital performed and had at least one third party perform testing on the blood that had been processed through the cell saver machine. A log entry by codefendant Haemonetics Corporation, the manufacturer of the machine, suggested that Dr. Randy Levine, then a hospital employee, had sent blood samples to a Dr. Valeri at Haemonetics’ suggestion for pyrogen testing. Thus plaintiff served in September 1998 a notice for discovery and inspection asking for the results of any such testing and all blood samples processed through the cell saver. In addition plaintiff sought the deposition of Dr. Levine, who is evidently no longer employed by the hospital.
In response, the hospital’s counsel by letter dated December 22, 1998 indicated that the testing of the blood at Dr. Levine’s *541 request was in counsel’s belief done as part of a quality assurance investigation, but in the “spirit of cooperation” provided bacteriology slips and test results obtained relating to testing done at the hospital. (Motion, exhibit B.) Defense counsel opposed Dr. Levine’s deposition on the ground that her testimony was privileged since it involved quality assurance matters. Defense counsel also indicated by letter dated December 15, 1998 that blood samples had been sent to a Dr. Valeri but that his testing was “inclusive [sic] and he was unable to provide any test results from the samples.” (Motion, exhibit C.) Defense counsel stated that “[w]e do not have any test results from Dr. Valeri nor is Dr. Valeri in possession of any such results.” (Ibid.) By letter dated December 30, 1998 plaintiffs counsel advised defense counsel that the letter of December 22, 1998 and attached lab slips and test results were inadequate because those materials merely revealed that cultures were performed which did not amount to an analysis of the materials processed through the cell saver. Evidently there were two bags of blood involved, only one of which included contents of the cyst. Plaintiffs counsel stated that there was no indication of which of the bags was tested or what happened to those bags. If a bag was sent to a third party then plaintiff wanted to know to whom it was sent, when it was sent and the contents of any oral or written communication with that person or entity. Plaintiffs counsel also indicated that such information was no more privileged under Education Law § 6527 than was an autopsy report.
By “so-ordered” stipulation dated April 29, 1999 it was agreed that motions regarding outstanding discovery would be filed within 30 days, that all parties would respond to outstanding discovery demands within 45 days, that a compliance conference would be held on July 29, 1999 and that the time to file a note of issue would be extended until August 1, 1999. The instant motion dated July 28, 1999 was then made by plaintiff.
Plaintiff now seeks (1) the results of all testing of blood processed through the cell saver, (2) all samples of such blood, (3) all documents indicating whether blood samples were sent to a third party for testing or other disposition, the parties to whom such samples were sent and the contents of any oral or written communication with such third party concerning such blood samples, (4) Dr. Levine’s deposition Concerning the ordering of testing of plaintiffs decedent’s blood, the testing performed and the results of such testing, (5) the deposition of a witness within the employment or control of the hospital *542 having knowledge of the ordering of testing of the blood, the tests performed, the results of such testing and the disposition of the blood samples and test results, and (6) copies of statements made by defendants Drs. West and Resta-Flarer at any quality assurance or peer review committee held by or on behalf of the hospital concerning the incident herein.
Defendants Dr. Resta-Flarer, the hospital and S.L.R. Medical Anesthesia, P. C. cross-move for sanctions claiming that because this motion was made about two months after the deadline set forth in the April 29, 1999 order it is frivolous and was made for purposes of harassing the defendants. The cross motion for sanctions is denied. The motion is not frivolous nor is there any evidence that it was brought to harass defendants. Moreover it is unclear from the cross motion whether all or only some of the items of discovery sought via the instant motion were covered by the April 1999 stipulation. To the extent that defendants assert that the motion should not be entertained because it was untimely, again it is not clear whether all the items now sought were the subject of the stipulation. In any event in the exercise of my discretion I shall entertain the motion since it is not unduly tardy as to any items covered by the stipulation.
As to the request for the statements of Drs. West and Resta-Flarer, defense counsel asserts that there were no statements. Plaintiffs counsel maintains that defense counsel lacks personal knowledge as to that assertion and requests an affidavit from a hospital representative with knowledge. Defendant is directed within 20 days of service of the order to be settled hereon with notice of entry to either provide such statements of the doctors or an affidavit from one with knowledge from the hospital indicating the basis for their knowledge and the lack of any such statements with respect to any such doctor who did not make such statements.
Plaintiff has requested all extant samples of the blood processed through the cell saver. Obviously the hospital believed that such blood may have been relevant since the hospital had it tested after the decedent’s death. Clearly, the blood itself is not privileged. It is unclear on this record whether any such blood exists or whether it was destroyed by the hospital which apparently thought it relevant enough to have it tested. Nonetheless to the extent that plaintiff seeks the production of the blood the motion is denied at this point in the litigation since, if it exists, plaintiff has not indicated the use to which he will put such blood. Presumably he wishes to *543 have it tested by an expert. It is unclear on this record how much, if any, blood exists, what form it is in, what type of testing plaintiff wishes to conduct or whether such testing would destroy evidence necessary to the defense of this action. However, the hospital is directed within the foregoing 20-day period to provide an affidavit of one with firsthand knowledge as to a search for such samples, the nature of the search and the results of such search including, if known, the ultimate fate of the blood if it is unavailable. If the hospital lacks knowledge as to whether some or all of the blood exists because it was at some point turned over to third parties the affiant shall so state and identify such third parties so that plaintiff if necessary can promptly seek to ascertain from any such third party whether any of the blood still exists. If blood exists, plaintiff, if he is so advised, shall promptly seek further discovery relief with respect to such blood.
With respect to plaintiffs request for the results of all tests performed on the blood (as opposed to documents referring to test result documents), defendants’ counsel, who has not indicated whether the defendants will seek to introduce at trial any evidence relating to the testing, has taken the position that such results are privileged but that in any event the results of all tests done at the hospital have been provided. No affidavit by one with knowledge has been provided to support the latter assertion. Nor has any affidavit been provided by one with knowledge indicating whether the hospital has copies of results from third parties (e.g., Dr. Valeri). As to the claim of privilege defendants have submitted the affidavit of Dr. Levine, who is silent as to the tests but who states that she became aware of Kraut only after her death and was only involved in her case in a quality assurance function. Dr. Levine indicated that she opened the quality assurance investigation in the case. All evidence of testing of the blood supports the assertion that the tests were ordered by Dr. Levine. (See, motion, exhibit B, attachments [which recite that tests were ordered by Dr. Levine]; affidavit in opposition, exhibit G [which suggests that Haemonetics gave Dr. Levine a Dr. Valeri’s number to call about testing the blood].) Defense counsel disputes the plaintiffs counsel’s assertion that the test results are not privileged pursuant to Public Health Law § 2805-m and Education Law § 6527 (3). Plaintiffs counsel maintains that such statutes were not meant to apply to the results of tests conducted on the patient’s own blood, i.e., physical evidence obtained from the patient, and asserts that the test *544 results are akin to autopsy results to which the plaintiff is entitled. Defense counsel states in response that the plaintiff has in fact been provided with the results of the autopsy conducted by the hospital and would not be entitled to find out where the specimens taken from the autopsy were located. (But see, May 15, 1997 preliminary conference order in County Clerk’s file filled out by parties in which all defendants were to get not only the autopsy records but were authorized to review slides and samples obtained during the autopsy; see also, Public Health Law § 4210 [3], which enabled plaintiff to designate a physician to observe the autopsy conducted by the hospital.)
I agree with plaintiff that the test results are akin to autopsy results to which it is undisputed the plaintiff is entitled. Education Law § 6527 (3) was not designed as a means to allow one-sided surreptitious laboratory analysis of physical evidence in the form of part of the patient’s body. Palmer v City of Rome (120 Misc 2d 558 [Sup Ct, Oneida County 1983]), relied on by defendants, is inapposite since the analysis there simply involved looking at slides including the plaintiffs. Presumably the plaintiff had access to her own slides which existed and were not created for quality assurance purposes, and the analysis there did not involve testing. Thus, with respect to the results of tests performed at the hospital, within the same 20-day period the hospital is directed to provide the affidavit of one with firsthand knowledge confirming that plaintiff has in fact been provided with all of the results of tests performed at the hospital on the blood from the cell saver and if he has not been provided with all such results is directed to provide a copy of any such test results or if the hospital believes that information on any test result document goes beyond reporting objective results and constitutes privileged quality assurance information, the hospital shall provide any such document to me for in camera inspection and possible redaction.
The hospital’s counsel (who lacks personal knowledge), as previously indicated, had informed plaintiffs counsel that the hospital had none of the results of Dr. Valeri’s testing. Within the same 20-day period the hospital is directed to provide an affidavit from one with firsthand knowledge identifying all third parties to whom blood from the cell saver was sent for testing and is to provide plaintiff with a copy of any test results obtained from any third party or again if any such test result document also contains what is believed to be information which goes beyond objective results and which is alleged to be privileged as quality assurance information, then the hospital *545 within that same 20-day period shall furnish me with a copy for in camera inspection and potential redaction. If the hospital has no such test results from any third party then within that same 20-day period the hospital shall provide the affidavit of one with firsthand knowledge so indicating. Plaintiff, if he is so advised, may thereafter promptly attempt to obtain appropriate discovery from the third party as to the tests performed, the results of those tests, and the fate of the blood provided for testing.
The balance of plaintiffs motion is denied at this time without prejudice to an oral application to renew at the next conference in this case.